# EXHIBIT I



**Phone: 916-513-5253**  
**Fax: 866-402-6875**  
**bennetomalu@bennetomalu.com**

**Autopsy and Anatomic Pathology**  
**Clinical Pathology and Toxicology**  
**Forensic Pathology**

**Neuropathology**  
**Epidemiology**  
**Medico-Legal Consultations**

DeWitt Lacy, Esq.  
The Law Offices of John L. Burris  
9701 Wilshire Blvd, Suite 1000  
Beverly Hills, CA 90212

July 18, 2021

Dear Mr. Lacy,

      **Re:  Cameron Ely and Valerie Ely, Deceased**  
            **Medico-Legal Report**

**Summary of Education, Training and Experience**
I completed medical school in 1990 at the University of Nigeria, Enugu, Nigeria. Upon graduating from medical school, I completed a one-year clinical housemanship at the University of Nigeria Teaching Hospital in the fields of pediatrics, internal medicine, general surgery, obstetrics, and gynecology. After housemanship, I worked as an emergency room physician at a university hospital in Nigeria for approximately three years. I sat for and passed my United States Medical Licensing Examinations [USMLE] while I worked as an emergency room physician. I came to the United States in 1994 through a World Health Organization scholarship to become a visiting research scholar for eight months at the Department of Epidemiology, Graduate School of Public Health, University of Washington, Seattle, Washington.

In 1995, I proceeded to the College of Physicians and Surgeons of Columbia University, New York, New York, at Harlem Hospital Center, to complete residency training in Anatomic Pathology and Clinical Pathology. In 1999 I proceeded to the University of Pittsburgh, Pittsburgh, Pennsylvania to complete residency training in forensic pathology and neuropathology. I hold four board-certifications in Anatomic Pathology, Clinical Pathology, Forensic Pathology and Neuropathology. I also hold a Masters in Public Health [MPH] degree in Epidemiology from the Graduate School of Public Health, University of Pittsburgh, Pittsburgh, Pennsylvania. I also hold a Masters in Business Administration [MBA] degree from the Tepper School of Business, Carnegie Mellon University, Pittsburgh, Pennsylvania, one of the leading business schools in the world. I am a Certified Physician Executive and an honorary fellow of the American Association of Physician Leadership [AAPL]. I also hold a fifth board-certification in medical management from the AAPL. I am licensed to practice medicine and surgery in four states in the United States namely Hawaii, California, Indiana, and Pennsylvania.

I am currently the President and Medical Director of Bennet Omalu Pathology [BOP], a California medico-legal consulting firm, and a Clinical Professor at the Department of Medical

Cameron Ely and Valerie Ely, Deceased
Medico-Legal Report

Page 2 of 7

Pathology and Laboratory Medicine, University of California, Davis. In my capacity as the Medical Director of BOP, I am a consulting forensic pathologist and neuropathologist to many hospitals in central California and to several counties in northern California. There are less than a few dozen practicing forensic pathologists-neuropathologists in the United States who are board-certified in both forensic pathology and neuropathology.

For over nineteen years, I have been involved in over ten thousand death and injury investigations in my career as a forensic pathologist and neuropathologist, which began in 1999. I have personally conducted and performed over nine thousand autopsies and death investigations and examined over ten thousand brain tissue specimens. I also perform trauma pattern analysis in both living patients and deceased patients to determine causes and mechanisms of sustenance of injuries and death. I am also involved in the evaluation of living victims of all types of injuries and trauma, including but not limited to victims of assault, traumatic falls, industrial and accidental injuries, medical complications and misadventures, rape, child abuse and sports-related injuries. I have been consulted and retained as an expert witness in one to two thousand cases involving all types of medico-legal cases across all jurisdictions in the United States including federal, state, county and municipal courts and arbitration panels; in both civil and criminal cases, for the plaintiff, defense, district attorneys and public defenders. I have been involved as an expert witness in complex class action and industrial lawsuits involving thousands of individuals and major corporations.

My areas of interest and focus include brain patho-physiology, brain injuries and brain trauma, in both living and deceased patients. I identified Chronic Traumatic Encephalopathy [CTE] in a retired football player when I performed an autopsy and examined the brain of Mike Webster in 2002. Subsequently, I identified CTE in other high-impact, high-contact sports athletes and in military veterans suffering from Post-Traumatic Stress Disorder [PTSD]. Since 2002 CTE has received international attention from the sports industry, sports medicine, and neuroscience. My work has been featured extensively in all media platforms across the world. My work and life were featured in a major Hollywood film, "Concussion" released in December 2015 by Sony Motion Pictures, in which the renowned actor, Will Smith, played me as Dr. Omalu. Several New York Times best-selling books have also been published on my life and work including "The League of Denial" and "Concussion". I have published several books including my memoir, "Truth Doesn't Have a Side", which was published in August 2017. My latest book, "Brain Damage in Contact Sports" was published in February 2018. I have published extensively in the medical and scientific literature authoring many scientific papers and book chapters.

I have received three honorary PhD degrees from two universities in the United States, and from the Royal College of Surgeons of Ireland in recognition of my work and expertise. I have also received numerous awards from across the world in recognition for my work and expertise in both living and deceased patients. I have received the "Distinguished Service Award" from the American Medical Association [AMA], which is the most prestigious award of the AMA. I have been honored by the United States Congress and I have appeared on multiple occasions before committees of the United States Congress and committees of State Legislatures across the Unites States advising them on matters relating to trauma. In 2019 and 2020 I was appointed to the Traumatic Brain Injury Board of the State of California to advise the state on matters relating to traumatic brain injuries.

Since 1999 I have testified as an expert witness in matters relating to all types of injuries and deaths in over 1000 court proceedings across the United States. I have attached a copy of my



Cameron Ely and Valerie Ely, Deceased
Medico-Legal Report

Page 3 of 7

curriculum vitae, which enumerates my body of work and experience in greater detail. I have also attached my fee schedule. The cases I have testified in, beginning in 2009, are enumerated at the end of my curriculum vitae.

Pursuant upon your request, I have reviewed the following materials in the case of Cameron Ely and Valerie Ely, Deceased:

<u>Materials Included in Dropbox Link:</u>

1. First Amended Complaint
2. Joel Rivlin Deposition Exhibits
    a. Parks investigative report
    b. Parks ID
    c. Interview with Taylor Parks
    d. Taylor Parks Instagram
3. Plaintiff's Initial Disclosures
    a. Valerie
        i. Voicemails
        ii. Text messages to friend Allison
        iii. Text messages
        iv. Photos and videos
        v. Doctors letters about her caregiving
    b. Plaintiff's Third Supplemental Disclosures
    c. Plaintiff's Second Supplemental Disclosures
    d. MISC
    e. Cameron
        i. Text messages
        ii. Professional
        iii. Photos and videos
        iv. MCL and meniscus
        v. Doctor's letter about his caregiving
        vi. CTE results
4. Digital Recorder Files
5. Deposition Summaries
    a. Desiree Thome
    b. Jeremy Rodgers
    c. Daniel Prichett
    d. Francisco Javier Mendez Jr.
    e. Captain Damien Manuele
    f. John Gruttadaurio
    g. Phillip Farley
    h. Christopher Brady
6. Defendant's Discovery Production
    a. Videos
        i. Dash Cam footage and COBAN Videos
    b. Unrelated Prior In Custody Death



Cameron Ely and Valerie Ely, Deceased
Medico-Legal Report

Page 4 of 7

    c. Shift Logs
    d. Pre-discovery Disclosurese. Photos
    f. Docs; Recs; Reports
    g. Audio: Interview & Dispatch7. Biedinger Deposition Exhibits

**Brief Summary of Prevailing Forensic Scenario**

At approximately 08:42 p.m. on October 15, 2019, 62-year-old Valerie Ely was pronounced deceased at her residence. According to the coroner's report, 30-year-old Cameron Ely, Valerie Ely's son, allegedly called 911 to report a domestic disturbance between his father, Ronald Ely, and Valerie. However, Valerie was stabbed by an unknown assailant, which prompted a 911 call. Law enforcement responded to the residence and contacted Ronald, who was wheel-chair bound because of a prior stroke. Law enforcement found Valerie deceased inside the residence. Cardiopulmonary resuscitation was not provided. As law enforcement was searching outside the residence, they came in contact with Cameron and shot him 22 times. Cameron was pronounced dead at the residence at approximately 09:57 p.m.

Autopsies were performed on the bodies of Cameron Ely and Valerie Ely at the Santa Barbara County Sheriff-Coroner's Office on October 17, 2019 and October 20, 2019 respectively. The cause of death of Cameron Ely was determined to be "Multiple Gunshot Wounds". The cause of death of Valerie Ely was determined to be "Multiple Stab Wounds"

**Medical-Legal Questions**

1. **Were Valerie Ely's wounds immediately fatal? Could she have survived for another 30 minutes?**

It is a generally accepted principle and common knowledge in medicine and forensic pathology, that specific traumatic events generate predictable, reproducible, and specific patterns of injuries and consequent sequelae of the injuries. Applying the clinico-pathologic method of differential diagnosis, a specific documented pattern of trauma can be evaluated, translated, and applied to the determination of the mechanisms of generation, causation, and sustenance of the specified trauma pattern and the attendant sequelae of the specified trauma pattern, with a reasonable degree of medical and scientific certainty; based on the established common knowledge and generally accepted principles of trauma patterns and their mechanisms of generation, causation, and sustenance.

The patterns of injuries generated by knives/ sharp force, and guns/ firearms, and the mechanisms of generation, causation, and sustenance of these patterns of injuries are very well-established in the medical literature and are common knowledge. Based on the prevailing forensic scenario, and on the generally accepted principles and common knowledge of medicine and science, and based on the global constellation, configuration and anatomic conformation of the sharp force injuries sustained by Valerie Ely, the mechanism of generation, causation and sustenance of her injuries and the anatomic and physiologic sequelae of her injuries can be determined with a reasonable degree of medical certainty.



Cameron Ely and Valerie Ely, Deceased
Medico-Legal Report

Page 5 of 7

Valerie Ely sustained seven stab wounds, four incised wounds and multiple superficial blunt force traumas of the head, trunk, and extremities. The blunt force traumas were superficial and were of no significant forensic consequence in terms of lethality and causation of death. The common mechanism of death for stab wounds is internal and/or external exsanguination. Only three of the seven designated stab wounds [#1, #5, #6] exhibited forensically significant internal loss of blood from the vascular compartment. These three wounds penetrated the left pleural cavity and the left lung, and combined together, produced only 1000 cc of left hemothorax with atelectasis of the left lung, as was documented at autopsy. Stab wound #2 penetrated the peritoneal cavity and the liver and produced only 100 cc of hemoperitoneum. All the stab wounds and incised wounds did not penetrate any vital or major blood vessel. Therefore, there was no catastrophic or massive bleeding caused by any of the stab or incised wounds. All the incised wounds were superficial and did not incise any vital organ or major blood vessel.

The mechanisms of death for all her stab wounds, incised wounds, and blunt force traumas, combined, would be loss of blood. Global atelectasis of only the left lung would not precipitate immediate death since the right lung was still intact and functional. Loss of blood as a mechanism of death does not involve immediate or instantaneous death. It is a slow type of death whereby the individual passes through the spectrum of consciousness and unconsciousness before dying.

Following the sustenance of her injuries, Valerie Ely, more likely than not passed through full alertness to lethargy or somnolence, to obtundation, to stupor or semi-coma, and eventually to superficial or light coma to deep coma, loss of consciousness and eventually death. She progressively bled internally and suffered the cascades of the sequelae of her injuries including traumatic shock. She progressively lost her motor functioning and lay unresponsive on the floor as the brain began to suffer hypoperfusion and hypoxic-ischemic cerebral injury. At this time, she remained conscious and alive in a state of progressive hypovolemic and traumatic shock. Within seconds of her trauma, the biochemical cycles and systems in her body began to express acute reactant proteins and peptides in response to the high levels of traumatic stress.

Secondary traumatic sequences of her injuries progressed, including traumatic shock, hemorrhagic shock, acute cardio-respiratory arrest, and hypoxic-ischemic cerebral injury. She progressed into deeper levels of traumatic and hypovolemic shock, as she developed more severe and advanced stages of acute respiratory arrest, acute cardiac arrest, cerebral hypoperfusion and cerebral hypoxic-ischemic injury. Traumatic shock and composite biochemical acute responses to injury progressed to multi-organ-system failure before she became comatose and died.

All these patho-physiological cascades and mechanisms of death take time to occur and develop. Therefore, Valerie Ely did not suffer an instantaneous or immediate death. Her injuries were not catastrophic injuries and were less likely to have caused immediate death. She could have survived for a long period after sustaining her injuries. No physician may be able to tell how long she survived after her injuries, however there is a reasonable degree of certainty that she could have survived for a long period of time that may have extended up to 10 to 30 minutes.



Cameron Ely and Valerie Ely, Deceased
Medico-Legal Report

Page 6 of 7

2. **What were the trajectories of the bullets that struck Cameron Ely? Were there knife wounds on the body of Cameron Ely?**

There were twenty-two gunshot wounds described on Cameron Ely at autopsy. The trajectories of these wounds in the three planes of nature are as follows, whereby 'B' stands for Backward; 'F' stands for Forward; 'U' stands for Upward; 'D' stands for Downward; 'L' stands for Leftward; and 'R' stands for Rightward:

A. B D R
B. B U R
C. F D R
D. F D R
E. F _ L
F. F D L
G. F D L
H. F D L
I. F D R
J. F D R
K. B U R
L. F U L
M. F U L
N. B U L
O. B D R
P. B U R
Q. B D L
R. F U R
S. F D L
T. F D L
U. B U R
V. F D L

Review of the autopsy report and autopsy pictures confirms that Cameron Ely sustained multiple randomly situated stab wounds and incised wounds of the neck, trunk, upper and lower extremities. It appears that many of the wounds that appear to be stab wounds were not recognized to be stab wounds and were not described in the autopsy report.

3. **Did the DNA analysis of the swabs of the knife found by the tennis court reveal the DNA of another individual that is not Cameron Ely?**

Yes, the DNA isolated from the swabs of the knife found by the tennis court originated from Cameron Ely and another unknown, unrelated individual. Valerie Ely was excluded as a contributor to the isolated DNA.

Valerie Ely and Cameron Ely were the two contributors to the DNA isolated from swabs from the handle of the knife found stuck in the chest of Valerie Ely.



I have provided all my opinions and conclusions with a reasonable degree of medical certainty.

I reserve the right to amend, supplement, revise and/or modify my opinions and report, up and to the time of trial, should additional information become available.

Thank you.

Very truly yours,

Bennet I. Omalu, MD, MBA, MPH, CPE, DABP-AP,CP,FP,NP
Clinical Pathologist, Anatomic Pathologist, Forensic Pathologist, Neuropathologist, Epidemiologist
President and Medical Director, Bennet Omalu Pathology
Clinical Professor of Medical Pathology and Laboratory Medicine, University of California, Davis

